Slip Op. 19-150

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHANDONG YONGTAI GROUP CO., LTD.,<br><br>       **Plaintiff,**<br><br>**and**<br><br>QINGDAO SENTURY TIRE CO., LTD., SENTURY TIRE USA INC., SENTURY (HONG KONG) TRADING CO., LIMITED, PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., and PIRELLI TIRE LLC,<br><br>       **Consolidated Plaintiffs,**<br><br>**v.**<br><br>UNITED STATES,<br><br>       **Defendant.** | Before: Jennifer Choe-Groves, Judge<br><br>Consol. Court No. 18-00077 |

## OPINION

[Sustaining in part and remanding in part the U.S. Department of Commerce's Final Results in the antidumping duty administrative review of certain passenger vehicle and light truck tires from the People's Republic of China.]

Dated: November 27, 2019

Jordan C. Kahn, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, D.C., argued for Plaintiff Shandong Yongtai Group Co., Ltd. With him on the briefs were Ned H. Marshak and Brandon M. Petelin.

Dharmendra N. Choudhary, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, N.Y., argued for Consolidated Plaintiffs Qingdao Sentury Tire Co., Ltd., Sentury Tire USA Inc., and Sentury (Hong Kong) Trading Co., Limited. With him on the briefs were Andrew T. Schutz, Brandon M. Petelin, Jordan C. Kahn, and Ned H. Marshak. Elaine F. Wong also appeared.

Daniel L. Porter and James P. Durling, Curtis, Mallet-Prevost, Colt & Mosle LLP, of
Washington, D.C., argued for Consolidated Plaintiffs Pirelli Tyre Co., Ltd., Pirelli Tyre S.p.A.,
and Pirelli Tire LLC.  With them on the briefs were Tung A. Nguyen, Kimberly Reynolds, and
Gina Colarusso.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department
of Justice, of Washington, D.C., argued for Defendant United States.  With her on the briefs were
Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M.
McCarthy, Assistant Director.  Of counsel was Ayat Mujais, Office of the Chief Counsel for
Trade Enforcement and Compliance, U.S. Department of Commerce.  Of counsel on the briefs
were David Campbell and Jessica R. DiPietro, Attorney-Advisor, Office of the Chief Counsel for
Trade Enforcement and Compliance, U.S. Department of Commerce.


Choe-Groves, Judge:  This action arises from the U.S. Department of Commerce's

("Commerce") administrative review of certain passenger vehicle and light truck tires ("PVLT")

from the People's Republic of China ("China" or "PRC").  Certain Passenger Vehicle and Light

Truck Tires From the People's Republic of China, 83 Fed. Reg. 11,690 (Dep't Commerce Mar.

16, 2018) (final results of antidumping duty administrative review and final determination of no

shipments) ("Final Results"); see Certain Passenger Vehicle and Light Truck Tires from the

People's Republic of China: Issues and Decision Memorandum for the Final Results of the

2015–2016 Antidumping Duty Administrative Review, PD 502 (Mar. 9, 2018) ("Final IDM").

Before the court are the motions for judgment on the agency record of Plaintiff Shandong

Yongtai Group Co., Ltd. ("Plaintiff," "Shandong Yongtai," or "Shandong Yongtai Group"),

Consolidated Plaintiffs Qingdao Sentury Tire Co., Ltd., Sentury Tire USA Inc., Sentury (Hong

Kong) Trading Co., Limited (collectively, "Sentury"), and Consolidated Plaintiffs Pirelli Tyre

Co., Ltd., Pirelli Tyre S.p.A., Pirelli Tire LLC (collectively, "Pirelli").  For the reasons that

follow, the court sustains in part and remands in part the Final Results to Commerce for further

consideration.

## ISSUES PRESENTED

This case presents the following issues:

1.      Whether Commerce's notice and initiation of the administrative review as to Plaintiff was in accordance with the law;

2.      Whether Commerce's determination not to grant a separate rate as to Shandong Yongtai Chemical Co., Ltd. was supported by substantial evidence;

3.      Whether Commerce's calculation of a value-added tax ("VAT") deduction to Sentury's U.S. price was supported by substantial evidence and in accordance with the law;

4.      Whether Commerce's decision not to make an adjustment for the Export Buyer's Credit Program ("EBCP"), as accounted for in the companion countervailing duty administrative review, was supported by substantial evidence and in accordance with the law; and

5.      Whether Commerce's determination that Pirelli was ineligible for a separate rate and Commerce's assignment of the China-wide entity rate was supported by substantial evidence and in accordance with the law.

## PROCEDURAL HISTORY

Commerce published the <u>Final Results</u> of the administrative review of PVLT from China on March 16, 2018.  <u>Final Results</u> at 11,690.  Plaintiff initiated this action on April 12, 2018, challenging certain aspects of Commerce's <u>Final Results</u>.  <u>See</u> Summons, Apr. 12, 2018, ECF No. 1; Compl. ¶ 1, Apr. 12, 2018, ECF No. 6 ("Compl.").  The court entered a statutory injunction on April 16, 2018.  <u>See</u> Order for Statutory Inj. Upon Consent, Apr. 16, 2018, ECF No. 10.  The administrative record was filed on May 29, 2018.  Ltr. from David W. Campbell, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of

Commerce, to Mario Toscano, Clerk of the Court, U.S. Court of International Trade, May 29,

2018, ECF No. 15.  The court consolidated this case with Court Numbers 18-00079 and 18-

00080 on June 14, 2018.  Order, Jun. 14, 2018, ECF No. 17.

Shandong Yongtai, Sentury, and Pirelli moved for judgment on the agency record.

Plaintiff's Mot. for J. on the Agency R., Oct. 2, 2018, ECF No. 20 ("Shandong Yongtai's Mot.");

Consol. Pl. Sentury's Mot. for J. on the Agency R. Pursuant to Rule 56.2, Oct. 2, 2018, ECF No.

21 ("Sentury's Mot."); Mot. for J. on the Agency R., Oct. 3, 2019, ECF No. 24 ("Pirelli's Mot.").

The court stayed this case following the lapse in appropriations for the Department of

Justice on January 8, 2019.  Order, Jan. 8, 2019, ECF No. 32.  Defendant moved to continue the

stay following restoration of appropriations on January 30, 2019.  Status Report and Request for

Continuation of Stay, Jan. 30, 2019, ECF No. 33.  The court denied Defendant's motion and

lifted the stay on January 30, 2019.  Second Am. Scheduling Order, Jan. 30, 2019, ECF No. 34.

Defendant responded.  Def.'s Mem. in Opp'n to Pls.' Rule 56.2 Mots. for J. Upon the

Agency R., Mar. 4, 2019, ECF No. 37 ("Def.'s Resp.").  Shandong Yongtai, Sentury, and Pirelli

replied.  Reply Br. of Pl. Shandong Yongtai Group Co., Ltd. (Formerly Known as Shandong

Yongtai Chemical Co., Ltd.), Apr. 19, 2019, ECF No. 44 ("Pl.'s Reply"); Reply Br. of Consol.

Pl. Sentury, Apr. 19, 2019, ECF No. 45 ("Sentury's Reply"); Reply Br. of Consol. Pls. Pirelli

Tyre Co., Ltd., Pirelli Tyre S.p.A., and Pirelli Tire LLC, Apr. 19, 2019, ECF No. 46 ("Pirelli's

Reply").  The joint appendix was filed on May 3, 2019.  Joint App'x to Opening Resp., and

Reply Brs. Regarding Pls.' Mot. for J. on the Agency R. Pursuant to Rule 56.2, May 3, 2019,

ECF No. 48.  Sentury filed notices of supplemental authority on May 17, 2019, and May 24,

2019.  Notice of Supplemental Authority, May 17, 2019, ECF No. 53; Notice of Supplemental

Authority, May 24, 2019, ECF No. 54.  The court heard oral arguments on June 18, 2019.  Oral

Argument Hr'g, Jun. 18, 2019, ECF No. 61.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012) and 19 U.S.C.

§§ 1516a(a)(2)(A)(i)(I) and (B)(iii).  The court will hold unlawful any determination, finding, or

conclusion found to be unsupported by substantial evidence on the record, or otherwise not in

accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## ANALYSIS

**I.      Notice and Initiation of the Administrative Review as to Shandong Yongtai**

**A.  Background**

Plaintiff was formed under the name Shandong Yongtai Chemical Group Co., Ltd.

("Shandong Yongtai Chemical Group") in August, 1995.  Shandong Yongtai Mot. 5; Shandong

Yongtai Separate Rate Appl., Ex. 7, Art. 1, PD 149 (Nov. 14, 2016) ("Shandong Yongtai SRA").

Plaintiff changed the company's name to Shandong Yongtai Chemical Co., Ltd. ("Shandong

Yongtai Chemical") in 2012.

Commerce initiated antidumping and countervailing duty investigations into PVLT from

China on July 21, 2014.  Certain Passenger Vehicle and Light Truck Tires from the People's

Republic of China, 79 Fed. Reg. 42,292 (Dep't Commerce July 21, 2014) (initiation of

antidumping duty investigation); Certain Passenger Vehicle and Light Truck Tires from the

People's Republic of China, 79 Fed. Reg. 42,285 (Dep't Commerce July 21, 2014) (initiation of

countervailing duty investigation).  Plaintiff participated in the investigation and sought a

separate rate.  See Certain Passenger Vehicle and Light Truck Tires from the People's Republic

of China, 80 Fed. Reg. 4,250, 4,251–52 (preliminary determination).  Commerce issued an

antidumping duty order as to PVLT from China on August 10, 2015.  See Certain Passenger

Vehicle and Light Truck Tires from the People's Republic of China, 80 Fed. Reg. 47,902 (Dep't

Commerce Aug. 10, 2015) ("AD Order").  Commerce assigned Plaintiff, identified as Shandong

Yongtai Chemical, a separate rate in the AD Order.  Id. at 47,905–47,906.

　　　　After Commerce issued the AD Order, Plaintiff changed its name to Shandong Yongtai

Group Co., Ltd. ("Shandong Yongtai Group") via an amendment to the company's Articles of

Association ("AOA").  Shandong Yongtai SRA, Exs. 3–7; see also Pl.'s Br. 6.  The name change

became effective on January 20, 2015 when the new business license was issued.  Shandong

Yongtai SRA, Exs. 3 & 7.  Shandong Yongtai Group and Shandong Yongtai Chemical shared

the same business license registration number.  See id.[1]

　　　　Commerce published the notice to request an administrative review on August 5, 2016.

Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to

Request Administrative Review, 81 Fed. Reg. 51,850 (Dep't Commerce Aug. 5, 2016).

Shandong Yongtai, identified as "Shandong Yongtai Group Co., Ltd. (formerly Shandong

Yongtai Chemical Co., Ltd.)," filed a request for administrative review.  Ltr. from Gaopeng &

Partners to Commerce at 1, PD 10 (Aug. 22, 2016) ("Pl. Request for Administrative Review")

---

[1] Plaintiff offers the following summary of its name changes and the corresponding periods each
name was in use:

| Full Company Name | Short Company Name | Time in Use |
|---|---|---|
| Shandong Yongtai Group Co., Ltd. | Yongtai Group | Jan. 2015 – Present |
| Shandong Yongtai Chemical Co., Ltd. | Yongtai Chemical | Nov. 2012 – Jan. 2015 |
| Shandong Yongtai Chemical Group Co., Ltd. | Yongtai Chemical Group | Aug. 1995 – Nov. 2012 |

Shandong Yongtai Mot. 1.

(emphasis omitted); see also Ltr. from Stewart and Stewart to Commerce, Attach. 1 at 7, PD 24

(Aug. 31, 2016).

Commerce published the initiation notice for antidumping and countervailing duty

administrative reviews with August anniversary dates on October 14, 2016.  See Initiation

of Antidumping and Countervailing Duty Administrative Reviews, 81 Fed. Reg. 71,061 (Dep't

Commerce Oct. 14, 2016) ("October Initiation Notice").  In that notice, Commerce initiated the

first administrative review of the antidumping duty order and findings for the period of January

27, 2015 to July 31, 2016.  October Initiation Notice, 81 Fed. Reg. at 71,065–71,066.  Commerce

identified "Shandong Yongtai Group Co., Ltd. (formerly known as Shandong Yongtai Chemical

Co., Ltd.)" in the October Initiation Notice.  Id.  During the period of review, Plaintiff used both

the old name, Shandong Yongtai Chemical Co., Ltd., and the new name, Shandong Yongtai

Group Co., Ltd., in sales and entry documents when exporting PVLT from China.  See Case

Brief of Shandong Yongtai Group Co., Ltd. (formerly known as Shandong Yongtai Chemical

Co., Ltd.), 14, PD 481 (Feb. 8, 2018).

Commerce subsequently included "Shandong Yongtai Chemical Co., Ltd.," (not the new

name, "Shandong Yongtai Group Co., Ltd.") in the administrative review of PVLT for the period

January 27, 2015 to July 31, 2016.  Initiation of Antidumping and Countervailing Duty

Administrative Reviews, 81 Fed. Reg. 78,778, 77,784 (Dep't of Commerce Nov. 9, 2016)

("November Initiation Notice").  In the November Initiation Notice, Commerce noted that "[t]he

name of this company was listed incorrectly in the initiation notice that published on October 14,

2016 (81 FR 71061).  The correct name of the company is listed in this notice."  Id.

### B.  Legal Framework

Under 19 U.S.C. § 1675, when a review of an antidumping duty order by Commerce is requested, Commerce must publish notice of the initiation of an administrative review in the Federal Register.  See 19 U.S.C. § 1675(a)(1).  Pursuant to 44 U.S.C. § 1507, the filing of a document in the Federal Register is sufficient to give notice of the contents of the document to a person subject to or affected by the document.  44 U.S.C. § 1507; see also 44 U.S.C. § 1505(a)(3).

### C.  Discussion

Plaintiff argues that Commerce did not provide adequate notice of the initiation of the administrative review as to Shandong Yongtai Chemical and that Commerce did not place the November Initiation Notice on the administrative record.  Pl.'s Br. 17–21; Pl.'s Reply 2–7.  Plaintiff contends that, as a result, Commerce lacked the authority to separately review Shandong Yongtai Chemical in this administrative review.  Id.  Plaintiff also argues that it lacked notice because the version of the November Initiation Notice posted on Commerce's website used "embedded graphics" and the November Initiation Notice was not text-searchable.  See Pl.'s Reply 4–7; see also Pl.'s Reply, Addendum 1.  Defendant counters that Commerce gave notice in accordance with 19 U.S.C. § 1675(a)(1) by naming Shandong Yongtai Chemical in the subsequent Federal Register notice, and that Plaintiff cannot claim that it was improperly included in the administrative review because Plaintiff submitted a request to be reviewed.  Def.'s Resp. 5–6, 10–12.

Plaintiff's arguments are not persuasive.  Not only did Plaintiff request its administrative review, but Commerce published initiation notices identifying Plaintiff in the Federal Register.

See Pl. Request for Administrative Review 1–2; October Initiation Notice, 81 Fed. Reg. at

71,065; November Initiation Notice, 81 Fed. Reg. at 78,784.  Because Commerce published the

initiation notices in the Federal Register as required by 19 U.S.C. § 1675, and publication in the

Federal Register is sufficient to give notice under 44 U.S.C. § 1507, the court concludes that

Commerce's notice in the Federal Register and initiation of the administrative review as to

Plaintiff was in accordance with the law.

**II.    Commerce's Determination Not to Grant Separate Rate Status to Shandong Yongtai Chemical Co., Ltd.**

**A.  Background**

Plaintiff submitted a single SRA on November 14, 2016.  See Shandong Yongtai SRA 1–

2.  In the letter accompanying Plaintiff's SRA, Plaintiff asserted that the SRA was submitted

"[o]n behalf of Shandong Yongtai Group Co., Ltd. ('Shandong Yongtai', formerly known as

'Shandong Yongtai Chemical Co., Ltd.')."  Shandong Yongtai's SRA 44, PD 149 (Nov. 14,

2016) (emphasis omitted).  In response to SRA Section II, Question 1, Plaintiff stated:

> Name: Shandong Yongtai Group Co., Ltd. (formerly known as 'Shandong
> Yongtai Chemical Co., Ltd.". [sic] It is noted that the name of the applicant was
> Shandong Yongtai Chemical Co., Ltd. during the period of investigation of the
> Antidumping Duty Investigation of Certain Passenger Vehicle and Light Truck
> Tires from the People's Republic of China.  The applicant was previously granted
> separate rate status under the name of 'Shandong Yongtai Chemical Co., Ltd.' as
> part of the final determination/results in the investigation of certain passenger
> vehicle and light truck tires from China 10/1/13-3/31/14; published in Federal
> Register 80 FR 47902 (August 10, 2015).  The name of the applicant was changed
> from Shandong Yongtai Chemical Co., Ltd. to Shandong Yongtai Group Co., Ltd.
> on January 20, 2015.  Please refer to the business license before and after the
> name change in Exhibit 3 for evidence.  The Registration No. 370523018069534
> on the business license before and after the name change in Exhibit 3 is the same.)

Id. at 10.  In response to Questions 2a and 2b, Plaintiff stated:

2a.  Is the applicant identified by any other names, such as trade names or 'doing-business-as' ('d.b.a.') names, as a legal matter in the home market, in third countries, or in the United States?[]

___  Yes (complete the chart below, in full)
_√_  No
. . . .

*2b Is the applicant requesting separate rate status for any of the trade names listed in the table above?  . . .

Response:  Not applicable.

Id. at 11.

In the Final Results, Commerce granted separate rate status to Shandong Yongtai Group, but not to Shandong Yongtai Chemical.  See Final Results at 11,691–92; IDM at 24–26, 32. Plaintiff argues, *inter alia*, that (1) Commerce may not conduct a separate rate analysis as to Shandong Yongtai Chemical separately from Shandong Yongtai Group, (2) Plaintiff provided the necessary information to determine that Shandong Yongtai Chemical was entitled to a separate rate, and (3) Commerce may not disregard the content of the SRA simply because Plaintiff did not identify Shandong Yongtai Chemical in the SRA Section II, Question 2.  See Pl.'s Br. 18–28.  Defendant contends that Commerce reviewed both Shandong Yongtai Group and Shandong Yongtai Chemical, and Commerce determined that Shandong Yongtai Chemical was not entitled to separate rate status based on Plaintiff's responses to SRA Section II Question 2a and Question 2b.  See Def.'s Br. 12–15.  Defendant further argues that Plaintiff's SRA lacked sufficient information that showed the separate rate eligibility of Shandong Yongtai Chemical or that Shandong Yongtai Group was the successor-in-interest of Shandong Yongtai Chemical,

which would extend the separate rate eligibility to Shandong Yongtai Chemical's entries.  Id. at

16–17.

### B.  Discussion

Defendant's arguments fail.  The court examines the record as a whole, taking into

account both the evidence that justifies and detracts from an agency's opinion.  See A.L.

Patterson, Inc. v. United States, 585 F. App'x 778, 782 (Fed. Cir. 2014).  Commerce relies on an

isolated reading of Plaintiff's responses to Questions 2a and 2b.  Such a reading ignores the

immediately preceding context to the questions, in which Plaintiff identified that Shandong

Yongtai Group was the same entity as Shandong Yongtai Chemical.  In the letter accompanying

Plaintiff's SRA, Plaintiff stated that the SRA was submitted "[o]n behalf of Shandong Yongtai

Group Co., Ltd. ('Shandong Yongtai', formerly known as 'Shandong Yongtai Chemical Co.,

Ltd.')."  Shandong Yongtai SRA 44.  Plaintiff also identified that Shandong Yongtai Group was

the same entity in response to SRA Section II, Question 1.  Id. at 53.  Although this information

was not reported in the Question 2a table, Plaintiff's answer provides the same information that

Commerce seeks to elicit through Question 2a, including whether the other name was covered by

the business license, the capacity in which the trade name or doing-business-as ("DBA") name

was used, whether the name was used in the period of review, and an identification of what

evidentiary support was provided.

Commerce's finding that "[Shandong] Yongtai Group did not submit any documentation

in its application showing its former name was [Shandong] Yongtai Chemical or regarding the

purported name change" is unreasonable and not supported by substantial evidence.  See IDM at

25.  As part of the SRA, Plaintiff provided business licenses, its AOA, and amendments to its

AOA.  See Shandong Yongtai SRA Exs. 3–7.  Plaintiff's SRA exhibits demonstrate that the

business license issued to Shandong Yongtai Group shared the same registration number as

Shandong Yongtai Chemical's business license.  See id.  Plaintiff's SRA exhibits show the

transition in the entity's name from Shandong Yongtai Chemical Group to Shandong Yongtai

Chemical, and to Shandong Yongtai Group Co., Ltd.  See id.  On this record, Commerce's

position that "[w]hile the [Shandong] Yongtai Group's separate rate application had sufficient

information to grant the [Shandong] Yongtai Group a separate rate, it provided no details with

respect to [Shandong] Yongtai Chemical," is not supported by substantial evidence.

The court concludes that Commerce's conclusion not to grant separate rate status as to

Shandong Yongtai Chemical was not supported by substantial evidence.  See IDM at 25.  The

court remands to Commerce for further consideration of separate rate status as to Shandong

Yongtai Chemical, either independently, or as to whether Shandong Yongtai Group is the

successor-in-interest to Shandong Yongtai Chemical.

### C.  Notice of Deficiencies in Shandong Yongtai's SRA

Shandong Yongtai argues that Commerce violated 19 U.S.C. § 1677m because

Commerce did not provide Shandong Yongtai with notice of any deficiencies in its SRA and

Commerce was required to use the SRA submitted by Shandong Yongtai to confer separate rate

status.  Shandong Yongtai's Mot. 16, 28–32; see also 19 U.S.C. § 1677m(d)–(e).  Defendant

counters that the provisions of 19 U.S.C. § 1677m(d) do not apply in this case.  Def.'s Resp. 19–

22.  Under 19 U.S.C. § 1677m(d), if Commerce determines that a submission is deficient, then

Commerce must "promptly inform the person submitting the response of the nature of the

deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy

or explain the deficiency in light of the time limits established for the completion of

. . . reviews." 19 U.S.C. § 1677m(d).  Pursuant to 19 U.S.C. § 1677m(e), Commerce may not

decline to consider information submitted by an interested party which is necessary to a

determination but does not meet all of the requirements established by Commerce under certain

circumstances.  See 19 U.S.C. § 1677m(e).  Because the court remands for reconsideration of

Commerce's denial of Shandong Yongtai's SRA, the court does not reach this issue.

### D. Agency Practice as to Prior Name and Name Variation of Entities Granted Separate Rate Status

Shandong Yongtai argues that Commerce contradicted its agency practice that recognizes

separate rates for entities using prior names and minor variations of names of entities granted

separate rates.  Shandong Yongtai's Mot. 16, 32–35; see also SDC Int'l Austl. Pty. Ltd. v. United

States, 41 CIT __, 234 F. Supp. 3d 1320, 1321 (2017).  Defendant counters that the example

cited by Shandong Yongtai involved minor changes in punctuation and capitalization, and did

not involve changes involving different words.  Def.'s Resp. 24–25.  Because the court remands

for reconsideration of Commerce's denial of Shandong Yongtai's SRA, the court does not reach

this issue.

### III.    Irrecoverable VAT Adjustment

### A.  Legal Framework

Commerce must reduce the export price and constructed export price of subject

merchandise by "the amount, if included in such price, of any export tax, duty, or other charge

imposed by the exporting country on the exportation of the subject merchandise to the United

States." 19 U.S.C. § 1677a(c)(2)(B).  Pursuant to this provision, Commerce reduces the export

price in nonmarket economy dumping margin calculations by "the amount of export taxes and

similar charges, including [VATs] not rebated upon export." Methodological Change for

Implementation of Section 772(c)(2)(B) of the Tariff Act of 1930, as Amended, In Certain Non-

Market Economy Antidumping Proceedings, 77 Fed. Reg. 36,481 (Dep't Commerce June 19,

2012).

### B. Background

In the present case, Commerce adjusted Sentury's U.S. price for irrecoverable VAT. See

Final IDM at 12–17. Commerce identified irrecoverable VAT as the portion of the input VAT

that was not fully refunded on exportation.[2] See Sentury C&D Questionnaire Resps. 41–45, PD

376 (July 21, 2017) ("Sentury's Section C&D Resp."). Commerce's irrecoverable VAT

calculation methodology included two steps: "(1) determining the irrecoverable VAT on subject

merchandise, and (2) reducing the U.S. price by the amount determined in step one." Final IDM

---

[2] Defendant further explains in its response that:

> VAT is an indirect, ad valorem, consumption tax imposed on the purchase or sale
> of goods. It is levied on the purchase or sale price of the good, i.e., it is paid by
> the buyer and collected by the seller for remittance to the government. Thus, a
> party (1) pays VAT on its purchases of inputs and raw materials (i.e., input VAT)
> as well as (2) collects VAT on its sales of their output products (i.e., output VAT).
> Firms calculate input VAT and output VAT for tax purposes on a company-wide
> (not transaction-specific) basis, and in the case of output VAT, on the basis of all
> sales to all markets, foreign and domestic. Firms claim a credit for input VAT
> paid against the output VAT collected, and remit any remaining output VAT to
> the government. However, under Chinese law producers in China, in most cases,
> do not recover (i.e., they are not refunded) the total input VAT they paid. Chinese
> tax law requires a reduction in or offset to the input VAT that can be credited
> against output VAT; the amount of tax that may not be exempted or offset is the
> irrevocable VAT.

Def.'s Resp. 81.

at 16.  Commerce determined that irrecoverable VAT was "(1) the [Free On Board] FOB value

of the exported good, applied to the difference between (2) the standard VAT levy rate and

(3) the VAT rebate rate applicable to exported goods."  Final IDM at 16.  Commerce noted that

"[t]he first variable, export value, is unique to each respondent while the rates in [variable]

(2) and [variable] (3), as well as the formula for determining irrecoverable VAT, are each

explicitly set forth in Chinese law and regulations."  Id.

Commerce explained that the Chinese VAT schedule indicates that the "standard" VAT

rate was seventeen percent, and the VAT rebate for the subject merchandise was nine percent.

See IDM at 16 (citing Sentury's Section C&D Resp. at 42, Sentury's Section C&D Resp. Exs. C-

8B and C-8C); see also Def.'s Resp. 77–78.  In the Final Results, Commerce "removed from the

U.S. price the amount calculated based on the difference between these rates (i.e., eight percent)

applied to the export sales value."  Final IDM at 16; see also Def.'s Resp. 77–78.

Sentury avers that "the only VAT Sentury pays with respect to export sales is the VAT

paid for domestic purchases of inputs used to produce tires."  Sentury Br. 10–12.

## C.  Discussion

Sentury argues that Commerce's deduction for VAT was not authorized by the plain

language of the statute, that even if the statute permitted the VAT deduction, the record

contradicts Commerce's interpretation of China's Circular on Value-Added Tax and

Consumption Tax Policies on Exported Goods and Services ("Circular 39"), and that

Commerce's methodology for VAT deduction was unreasonable and contrary to record

evidence.  Sentury Br. 5–29; see also Circular 39, Ex. C–8B, bar code 3596327–02 (Jul. 21,

2017) ("Ex. C–8B").

Defendant responds by further attempting to explain Commerce's methodology for the

VAT deduction at issue in this case.  In the alternative, Defendant requests remand to provide

further explanation of Commerce's methodology for calculating irrecoverable VAT under 19

U.S.C. § 1677a(c)(2)(B).  Def.'s Resp. 83.

In support of Commerce's methodology, Defendant contends that under Chinese law, the

irrecoverable VAT, i.e., in Commerce's terms, the difference between input and output VAT, "is

defined in terms of, and applies to, total (company-wide) input VAT across purchases of all

inputs, whether used in the production of goods for export or domestic consumption" and that

"[t]he reduction/offset does not distinguish the VAT treatment of export sales from the VAT

treatment of domestic sales from an input VAT recovery standpoint, for the simple reason that

such treatment under Chinese law applies to the company as a whole, not specific markets or

sales."  Def.'s Resp. 83.  Defendant contends that because irrecoverable VAT in China is

calculated on the basis of the FOB value of exported goods, irrecoverable VAT "can be thought

of as a tax on the company . . . that the company would not incur but for the export sales it

makes, a tax fully allocable to export sales because the firm under Chinese law must book it as a

cost of exported goods."  Def.'s Resp. 83; see also Circular 39.  In this case, Commerce presents

the calculation as: "Reduction/Offset = P (P – c) x (T1 – T2)," where "P = (VAT-free) FOB

value of export sales; c = value of bonded (duty- and VAT-free) imports of inputs used in the

production of goods for export; T1 = VAT rate; and T2 = refund rate specific to the export

good," from which a firm must calculate creditable input VAT by applying the formula

"Creditable input VAT = Total input VAT – Reduction/Offset."  Def.'s Resp. 82.

Commerce's <u>Final Results</u> do not provide a convincing explanation of how VAT, whether or not recoverable upon export, is properly the subject of a downward adjustment to U.S. price under 19 U.S.C. § 1677a(c)(2)(B).  The court remands to Commerce for additional explanation of Commerce's methodology for calculating irrecoverable VAT under 19 U.S.C. § 1677a(c)(2)(B).

Commerce further asserts that "[t]he record evidence demonstrates that Sentury was not refunded 8 percent of the value of exports of subject merchandise."  Def.'s Resp. 76–77 (citing P.R. 376 at 42, Exhibits C–8B & C–8C; P.R. 377 at Exhibit C–8C, C–9).  Commerce's statement fails to explain how the cited exhibits show that Sentury was not refunded eight percent of the value of the exports of subject merchandise.  On remand, Commerce should provide a detailed explanation of how Commerce applied the record to reach its conclusion that Sentury was not refunded eight percent of the value of the exports of subject merchandise.  <u>See</u> Def.'s Resp. 77, 82; <u>see also</u> Qingdao Sentury Tire Co., Ltd. Sections C&D Questionnaire Responses (July 21, 2017) Exhibits C–8C, C–9, C–10, P.R. 375 –78; C.R. 390–409, May 3, 2019, ECF No. 47.

The court concludes that Commerce's <u>Final Results</u> as to VAT are not supported by substantial evidence and are not in accordance with the law.  The court remands for further explanation consistent with this opinion.

## IV.   Adjustment for Export Buyer's Credit Program

### A.  Background

In the counterpart countervailing duty ("CVD") review, Commerce found that the EBCP constituted a financial contribution and met the specificity requirements of the statute, but Commerce did not make an explicit statement that the EBCP was an export subsidy contingent

upon export performance.  Def.'s Resp. 63–64; <u>see</u> Issues and Decision Memorandum for

Certain Passenger Vehicle and Light Truck Tires at 23, C-570-017 (Aug. 31, 2017), <u>available at</u>

https://enforcement.trade.gov/frn/summary/prc/2017-18997-1.pdf (last visited November 27,

2019) ("CVD AR Preliminary Results").

 In the <u>Final Results,</u> Commerce granted Sentury certain double-remedies adjustments

pursuant to 19 U.S.C. § 1677f–1(f)(1)(A)–(C), but made no adjustment for the CVD rates

applied to the EBCP in the companion CVD administrative review.  U.S. Department of

Commerce Memorandum to File, Re: Export Subsidy and Double-Remedy Adjustments,

accompanying Final Results, 1–3, PD 506 (Mar. 9, 2018).  Commerce contended that it found

the EBCP to be countervailable on the basis of adverse facts available ("AFA") and that

Commerce applied CVD rates based on AFA.  <u>Id.</u> at 2.  Commerce concluded that without a

determination that the EBCP provided an export subsidy in the companion CVD administrative

review, Commerce was not required to adjust Sentury's U.S. prices for the EBCP in the present

AD administrative review.  <u>Id.</u> at 2–3.

 **B.  Legal Framework**

 A subsidy is countervailable when an authority provides a financial contribution to a

person, a benefit is conferred, and the subsidy is specific, as described in 19 U.S.C. § 1677(5A).

19 U.S.C. § 1677(5)(A)–(B).  A subsidy is specific if it is an export subsidy, an import

substitution subsidy, or a domestic subsidy under 19 U.S.C. § 1677(5A)(A)–(D).  Under 19

U.S.C. § 1677(5A)(B), an export subsidy is a subsidy that is, in law or in fact, contingent upon

export performance, alone or as one of two or more conditions.  19 U.S.C. § 1677(5A)(B).

Pursuant to 19 U.S.C. § 1677a, Commerce is required to increase the price used to establish

export price and constructed export price by "the amount of any countervailing duty imposed on the subject merchandise. . . to offset an export subsidy." 19 U.S.C. § 1677a(c)(1)(C).

**C. Discussion**

Sentury claims that Commerce's decision to not adjust Sentury's U.S. price for the EBCP addressed in the companion CVD review was unreasonable and contrary to law. Sentury's Mot. 2–3, 30; 19 U.S.C. § 1677a(c)(1)(C). First, Sentury argues that 19 U.S.C. § 1677a(c)(1)(C) does not permit Commerce to decline to make an adjustment under the rationale that a CVD rate was based on AFA. Id. at 31–32; see 19 U.S.C. § 1677a(c)(1)(C). Second, Sentury argues that Commerce improperly determined the EBCP did not qualify for a double-remedy offset because Commerce found the EBCP was an export subsidy in the underlying PVLT investigation. Sentury's Mot. 36–37. Sentury also contends there are no unique facts or situations present in this administrative review that justify deviation from Commerce's past practices. Id. at 38.

Defendant argues that although Commerce applied AFA in the CVD review and Commerce determined that the EBCP was specific and constituted a financial contribution, Commerce did not make a finding that the EBCP was an export subsidy within the meaning of 19 U.S.C. § 1677(5A)(B). Def.'s Resp. 63. Defendant contends that "when Commerce has not found that a program is an export subsidy within the meaning of 19 U.S.C. § 1677(5A)(B), but has instead, based on the facts otherwise available with an adverse inference found that the program is specific within the meaning of 19 U.S.C. § 1677(5A), Commerce does not have a basis on which to make an export subsidy adjustment pursuant to 19 U.S.C. § 1677a(c)(1)(C)." Def.'s Resp. 67. Defendant argues that Commerce's practices regarding double-remedy offsets

changed following the original investigation, and Commerce does not make an adjustment to

U.S. price when a subsidy is specific, but not export contingent.  Def.'s Resp. 65.

Defendant's arguments are unavailing.  Commerce determined that the EBCP met the

specificity requirements of the statute.  See Def.'s Resp. 63–64; CVD AR Preliminary Results

23.  Although Commerce made no explicit findings as to export contingency, Commerce stated

that "[t]hrough this program, the [Chinese] Ex[port]-Im[port] Bank provides loans at preferential

rates for the purchase of exported goods from [China]."  CVD AR Preliminary IDM 32.

Commerce's conclusion that the EBCP is specific includes a finding that the program is

contingent on export performance in this case, even though Commerce did not explicitly state its

reasoning.  See Changzhou Trina Solar Energy Co., Ltd. v. United States, 43 CIT __, __, 359 F.

Supp. 3d 1329, 1340 (2019).  After having made a finding of specificity in the counterpart CVD

administrative review, which necessarily includes an export subsidy finding, Defendant may not

now say that such a finding is lacking simply because Commerce failed to make the finding

explicit.  Commerce's determination not to make an adjustment for the ECBP is not supported by

substantial evidence and is not in accordance with law.  The court remands the Final Results to

Commerce for reconsideration of an adjustment for the ECBP in the counterpart CVD review.

## V.   Commerce's Determination Not to Grant Separate Rate Status to Pirelli

### A.  Background

Pirelli Tyre was established as a Sino-foreign joint venture between the Dutch subsidiary

of Pirelli & C. S.p.A. and Hixih Group in 2005.  Pirelli's Mot. 33; Pirelli Tyre's Separate Rate

Application 16, PD 192–193 (Nov. 17, 2016) ("Pirelli SRA"); Pirelli SRA Attach. A.  Pirelli &

C. S.p.A. was the Italian holding company of the Pirelli Group.  Pirelli's Mot. 32; Pirelli SRA

16–17.  Chem China acquired Pirelli S.p.A. in October 2015.  Pirelli's Mot. 38; Pirelli SRA,

Attach. G(3).  Chem China is a government-owned company.  See Pirelli's Mot. 1, 3, 29.  Pirelli

& C. S.p.A. was delisted from the Milan stock exchange in November 2015.  Id. at 50; Pirelli

SRA 2.

        Pirelli applied for a separate rate in the administrative review.  Pirelli's Mot. 1; Pirelli

SRA 1–2.  In the Preliminary Results, Commerce determined that Pirelli did not qualify for

separate rate status because "there was *de facto* Chinese government control over the company

through Chem China's ownership of Pirelli S.p.A."  Final IDM at 28; Preliminary IDM 16; U.S.

Dep't of Commerce Mem. re: Preliminary Denial of Separate Rate Status at 2, PD 427 (Aug. 31,

2017).  In the Final Results, Commerce noted that "[i]n proceedings involving NME countries,

Commerce maintains a rebuttable presumption that all companies within the country are subject

to government control and, therefore, should be assessed a single weighted-average dumping

margin" and that "Commerce will only grant separate rate status to entities that can demonstrate

the absence of both *de jure* and *de facto* government control over its export activities."  Final

IDM at 27–28.  Commerce concluded that Pirelli was not eligible for separate rate status in the

Final Results because Pirelli did not demonstrate the absence of both *de jure* and *de facto*

government control over its export activities.  Final IDM at 26–28.

    **B.  Legal Framework**

        Commerce has the authority to determine if a country is a nonmarket economy pursuant

to 19 U.S.C. § 1677(18).  See 19 U.S.C. § 1677(18); see also Sigma Corp. v. United States, 117

F.3d 1401, 1404–06 (Fed. Cir. 1997).  In proceedings involving a nonmarket economy, such as

China, there is a rebuttable presumption that all companies within the country are subject to

government control and should be assigned a single, country-wide antidumping duty rate.  See

Sigma Corp, 117 F.3d at 1405.  An exporter will receive the country-wide rate by default unless

it affirmatively demonstrates that it enjoys both *de jure* and *de facto* independence from the

government and receives a separate rate status.  See id.  The burden of rebutting the presumption

of government control rests with the exporter.  See id. at 1405–06.  The *de jure* criteria are:

(1) an absence of restrictive stipulations associated with an individual exporter's business and

export licenses; (2) any legislative enactments decentralizing control of companies; and (3) any

other formal measures by the government decentralizing control of companies.  See Ad Hoc

Shrimp Trade Action Comm. v. United States, 37 CIT __, __, 925 F. Supp. 2d 1315, 1320 n. 21

(2013); see also Sparklers From the People's Republic of China, 56 Fed. Reg. 20,588, 20,589

(Dep't Commerce May 6, 1991) (final determination of sales at less than fair value).  The *de*

*facto* criteria are: (1) whether the export prices are set by or are subject to the approval of a

government authority; (2) whether the respondent has authority to negotiate and sign contracts

and other agreements; (3) whether the respondent has autonomy from the government in making

decisions regarding the selection of management; and (4) whether the respondent retains the

proceeds of its export sales and makes independent decisions regarding disposition of profits or

financing of losses.  See Ad Hoc Shrimp Action Trade Comm., 925 F. Supp. 2d at 1320 n.21; see

also Silicon Carbide from the People's Republic of China, 59 Fed. Reg. 22,585–01, 22,587

(Dep't Commerce May 2, 1994) (notice of final determination of sales at less than fair value).

### C.  Discussion

Pirelli argues that Commerce did not apply the appropriate legal criteria for determining

when a Chinese exporter has demonstrated an absence of *de facto* control to justify separate rate

status.  Pirelli's Mot. 2–3.  Pirelli contends that Commerce incorrectly denied Pirelli a separate

rate status because Commerce improperly applied the legal criteria for separate rate eligibility by

considering only the extent of government ownership.  Pirelli's Mot. 27.  Pirelli also argues that

Commerce's determination of PRC government control was not supported by substantial

evidence.  Pirelli's Mot. 27.  Defendant argues that Pirelli's acquisition by Chem China created a

presumption against entitlement to a separate rate, and that Pirelli was under *de facto* control of

the Chinese government.  Def.'s Resp. 58.[3]

Defendant's argument is not persuasive.  Defendant fails to adequately explain how the

acquisition of Pirelli S.p.A. by Chem China *in Italy* altered the ownership of Pirelli entities *in*

*China* such that the rebuttable presumption of government ownership applies or that if the

presumption applies, that evidence on the record was not sufficient to rebut the presumption.

See Sigma Corp, 117 F.3d at 1405–06 (addressing the rebuttable presumption as to companies

*within the country* being subject to government control).  Defendant's position is not aided by

Commerce's limited review of Pirelli as to the extent of government ownership without a more

fulsome discussion of the criteria for *de jure* and *de facto* governmental control as those criteria

apply in this case.  See Final IDM at 26–28.  Absent that analysis here, the court cannot conclude

that Commerce's inference of *de facto* government control over Pirelli's China-based entities by

---

[3] Defendant also argues that Pirelli's claim should be waived for failure to exhaust administrative remedies.  Def.'s Resp. 30.  Pirelli asserts, *inter alia*, that it presented these arguments in its separate rate application and in its case brief, that the Final Results indicate that Commerce was on notice of Pirelli's argument.  See Pirelli Reply 14–16.  The court concludes that Pirelli's argument is not waived in this case.  See 28 U.S.C. § 2637.

means of Chem China's ownership of Pirelli S.p.A is either supported by substantial evidence or in accordance with the law.

### D.   Denial of Separate Rate Status as to Pirelli for a Bifurcated Period

Pirelli contends that Commerce's decision not to grant Pirelli separate rate status for the period of time before Chem China's acquisition was not supported by substantial evidence and was not in accordance with law.  Pirelli's Mot. 48–52.  Pirelli argues that the record contained sufficient evidence to demonstrate Pirelli's status as a publicly listed company without Chinese ownership prior to Chem China's acquisition.  Pirelli's Mot. 50.  Defendant argues that Commerce denied Pirelli separate rate status for the segment of the period of review before Chem China's acquisition because Pirelli did not provide complete ownership information for that segment of time.  Def.'s Resp. 49–51.

In the Final Results, Commerce asserted that Pirelli did not provide complete ownership information for the period before China acquired Pirelli S.p.A, but did provide complete ownership information for the period after Chem China acquired Pirelli S.p.A.  See Final IDM at 28; Def.'s Resp. 25.  Commerce assessed that Pirelli did not provide complete ownership information as to Pirelli's intermediate and ultimate owners from January through October 2015.  Final IDM at 28.  Commerce concluded that Pirelli's claim, that Pirelli's ownership structure prior to October 2015 was the same as Pirelli's ownership structure during the underlying investigation, was not supported by the record in the administrative review.  Id.  Because the court remands for reconsideration of Pirelli's separate rate status, the court does not reach this issue.

### E.  Application of the China-Wide Entity Rate to Pirelli

Because Pirelli did not receive separate rate status, Commerce assigned Pirelli the China-wide entity rate.  Pirelli argues, *inter alia*, that Commerce lacks statutory authority to establish a China-wide entity rate.  Pirelli Br. 7–26.  Defendant counters that Commerce may assign a China-wide entity rate to exporters that cannot demonstrate both *de jure* and *de facto* independence and that the U.S. Court of Appeals for the Federal Circuit has upheld the application of PRC-wide entity rates to respondents.  Def.'s Resp. 26, 33 (citing Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304, 1312 (Fed. Cir. 2017)).  Because the court remands for reconsideration of separate rate status as to Pirelli, the court does not reach the issue of Commerce's assignment of the PRC-wide rate to Pirelli.

### CONCLUSION

For the foregoing reasons, the court concludes that:

1.      Commerce's notice and initiation of the administrative review as to Plaintiff was in accordance with the law;

2.      Commerce's determination not to grant a separate rate as to Shandong Yongtai Chemical was not supported by substantial evidence;

3.      Commerce's calculation of a VAT deduction to Sentury's U.S. price was not supported by substantial evidence and not in accordance with the law;

4.      Commerce's decision not to make an adjustment for the EBCP in the companion countervailing duty administrative review was not supported by substantial evidence and not in accordance with the law; and

5.      Commerce's decision to deny Pirelli separate rate status was not supported by substantial evidence and not in accordance with the law.

Upon consideration of all papers and proceedings in this action, it is hereby

**ORDERED** that Commerce shall file its remand determination on or before January 27, 2020; and it is further

**ORDERED** that Commerce shall file the administrative record on or before February 10, 2020; and it is further

**ORDERED** that Parties' comments in opposition to the remand determination shall be filed on or before February 26, 2020; and it is further

**ORDERED** that Parties' comments in support of the remand determination shall be filed on or before March 27, 2020; and it is further

**ORDERED** that the Joint Appendix shall be filed on or before April 10, 2020.

                                                       /s/ Jennifer Choe-Groves
                                                   Jennifer Choe-Groves, Judge

Dated:   November 27, 2019
             New York, New York