Slip Op. 20-182

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHANDONG YONGTAI GROUP CO., LTD.,<br><br>       **Plaintiff,**<br><br>**and**<br><br>QINGDAO SENTURY TIRE CO., LTD., SENTURY TIRE USA INC., SENTURY (HONG KONG) TRADING CO., LIMITED, PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., and PIRELLI TIRE LLC,<br><br>       **Consolidated Plaintiffs,**<br><br>**v.**<br><br>UNITED STATES,<br><br>       **Defendant.** | Before: Jennifer Choe-Groves, Judge<br><br>Consol. Court No. 18-00077 |

## OPINION AND ORDER

[Sustaining in part and remanding in part the remand results of the U.S. Department of Commerce in the antidumping duty administrative review of certain passenger vehicle and light truck tires from the People's Republic of China.]

Dated:  December 21, 2020

<u>Jordan C. Kahn</u> and <u>Ned H. Marshak</u>, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, N.Y. and Washington, D.C., for Plaintiff Shandong Yongtai Group Co., Ltd.

<u>Ned H. Marshak</u>, <u>Dharmendra N. Choudhary</u>, and <u>Jordan C. Kahn</u>, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, N.Y. and Washington, D.C., for Consolidated Plaintiffs Qingdao Sentury Tire Co., Ltd., Sentury Tire USA Inc., and Sentury (Hong Kong) Trading Co., Limited.

<u>Daniel L. Porter</u>, <u>James P. Durling</u>, and <u>Tung A. Nguyen</u>, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, D.C., for Consolidated Plaintiffs Pirelli Tyre Co., Ltd., Pirelli Tyre S.P.A.,

and Pirelli Tire LLC.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department
of Justice, of Washington, D.C., for Defendant United States.  With her on the brief were Joseph
H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy,
Assistant Director.  Of counsel on the brief was Ayat Mujais, Office of the Chief Counsel for
Trade Enforcement and Compliance, U.S. Department of Commerce.

Choe-Groves, Judge:  Before the court are the Final Results of Redetermination Pursuant

to Remand, ECF Nos. 71, 72 ("Remand Results"), which the court ordered in Shandong Yongtai

Group Co. v. United States ("Shandong Yongtai"), 43 CIT __, 415 F. Supp. 3d 1303 (2019).

The court assumes familiarity with the underlying facts and procedural history of this

case.  See id. at __, 415 F. Supp. 3d at 1306–17.  This action arises from the administrative

review by the U.S. Department of Commerce ("Commerce") of certain passenger vehicle and

light truck tires from the People's Republic of China ("China").  Certain Passenger Vehicle and

Light Truck Tires from the People's Republic of China ("Final Results"), 83 Fed. Reg. 11,690

(Dep't Commerce Mar. 16, 2018) (final results of antidumping duty administrative review and

final determination of no shipments; 2015–2016; see Certain Passenger Vehicle and Light Truck

Tires from People's Republic of China: Issues and Decision Mem. Final Results 2015–2016

Antidumping Duty Admin. Review, PD 502 (Mar. 9, 2018) ("Final IDM"); see also Decision

Mem. Prelim. Results Antidumping Duty Admin. Review: Certain Passenger Vehicle and Light

Truck Tires from People's Republic of China, PD 420 (Aug. 31, 2017) ("Prelim. IDM").

Commerce filed the Remand Results in response to the court's opinion in Shandong

Yongtai.  Remand Results at 1.  Plaintiff Shandong Yongtai Group Co., Ltd. ("Shandong

Yongtai" or "Plaintiff") filed comments in partial support of the Remand Results.  Shandong

Yongtai's Comments Supp. Remand, ECF No. 82 ("Pl. Cmts.").  Consolidated Plaintiffs

Qingdao Sentury Tire Co., Sentury (Hong Kong) Trading Co., and Sentury Tire USA Inc.

(collectively, "Sentury") filed comments in partial opposition to the Remand Results.  Sentury's

Comments Opp'n Remand, ECF No. 77 ("Sentury Opp'n Cmts.").  Sentury filed additional

comments in partial support of the Remand Results.  Sentury's Comments Supp. Remand, ECF

No. 83 ("Sentury Supp. Cmts.").  Consolidated Plaintiffs Pirelli Tyre Co., Pirelli Tire LLC, and

Pirelli Tyre S.p.A. (collectively, "Pirelli") filed comments in opposition to the Remand Results.

Comments Consol. Pls. Pirelli Tyre Commerce's Redetermination Remand, ECF Nos. 78, 79

("Pirelli's Comments" or "Pirelli Cmts.").[1]  Defendant United States ("Defendant") filed a reply

to all comments in opposition to the Remand Results.  Def.'s Resp. Pls.' Comments Dep't

Commerce's Remand Results, ECF Nos. 84, 85 ("Def. Resp.").

    For the reasons that follow, the court sustains in part and remands in part the Remand

Results to Commerce for further consideration.

## ISSUES PRESENTED

    This case presents the following issues:

    1.    Whether Commerce's deduction of a value-added-tax ("VAT") from Sentury's

export price is in accordance with the law and supported by substantial evidence;

    2.    Whether Commerce's assignment of the China-wide entity rate to Pirelli is

supported by substantial evidence;

    3.    Whether Commerce's determination to make an export subsidy adjustment for the

Export Buyer's Credit Program ("EBCP") is in accordance with the law; and

---

[1] Pirelli's Comments identify only two Consolidated Plaintiffs, Pirelli Tyre Co. and Pirelli Tire
LLC, but the docket lists a third Consolidated Plaintiff, Pirelli Tyre S.p.A. in all of Pirelli's
filings in this case.  See Mot. J. on the Agency R., ECF Nos. 22, 23, 24; Reply Br. Consol. Pls.
Pirelli Tyre Co., Pirelli Tyre S.p.A., and Pirelli Tire LLC, ECF No. 46; Mot. Oral Arg., ECF No.
51.  The docket lists Pirelli S.p.A. in Pirelli's latest filings (Pirelli Cmts., ECF Nos. 78, 79) and
Commerce reviewed Pirelli S.p.A. in its Remand Results, so the court lists all three Consolidated
Plaintiffs.  See Remand Results at 2; see also Pirelli Cmts.

4.     Whether Commerce's determination that Plaintiff is the successor-in-interest to Shandong Yongtai Chemical Co., Ltd. ("Shandong Yongtai Chemical") is supported by substantial evidence.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii).  The court will hold unlawful any determination found to be unsupported by substantial evidence on the record, or otherwise not in accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.     Commerce's Deduction of Irrecoverable VAT

The first issue considered by the court is whether Commerce's calculation of a VAT deduction to Sentury's export price is in accordance with the law and supported by substantial evidence.  In the Final Results, Commerce determined that Sentury's irrecoverable VAT was an "other charge imposed" by China pursuant to 19 U.S.C. § 1677a(c)(2)(B).  See Shandong Yongtai, 43 CIT at __, 415 F. Supp. 3d at 1312–13; see also Final IDM at 15–16.  Commerce reduced Sentury's export price[2] by using a two-step methodology to (1) determine the irrecoverable VAT on subject merchandise, and (2) reduce Sentury's export price by the amount

---

[2] Commerce calculated Sentury's export price through the average-to-transaction method. Prelim. IDM at 25–26.  The average-to-transaction method of comparison directs Commerce to compare the weighted average of "normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise." 19 CFR § 351.414(b)(3); see also Prelim. IDM at 22–24.  Under this methodology, Commerce determined Sentury's dumping margin by comparing both export price transactions and constructed export price transactions against normal values.  See Prelim. IDM at 25–26.  Commerce determined Sentury's dumping margin by reviewing both Sentury's export prices and constructed export prices.  Id. Commerce did not alter this methodology in its Final Results.  Cf. Final Results, 83 Fed. Reg. at 11,694.

determined in step one.  Final IDM at 16.  The court remanded to Commerce for further

explanation of how Sentury's irrecoverable VAT was properly the subject of a downward

adjustment to Sentury's export price pursuant to 19 U.S.C. § 1677a(c)(2)(B).  Shandong Yongtai,

43 CIT at __, 415 F. Supp. 3d at 1313–14.

Commerce used the same methodology on remand and determined that Sentury's

irrecoverable VAT was an other charge imposed by China pursuant to 19 U.S.C.

§ 1677a(c)(2)(B).  Remand Results at 9–20.  Commerce asserted that it was authorized to deduct

Sentury's irrecoverable VAT from the export price because Commerce could deduct the amount,

if included in the price, of any export tax, duty, or other charge imposed by the exporting country

on the exportation of the subject merchandise to the United States under 19 U.S.C.

§ 1677a(c)(2)(B).  Id. at 10–16.  Sentury opposed Commerce's methodology as contrary to law

by contradicting the plain meaning of the statute and legislative history, and as unsupported by

substantial evidence.  Sentury Opp'n Cmts. at 2–12, 25–29.

When calculating export price or constructed export price of the subject merchandise,

Commerce is directed by statute to make certain additions to, and deductions from, the starting

prices used for determining the export price or constructed export price of the subject

merchandise.  19 U.S.C. § 1677a(c), (d).  Some of these adjustments are made to achieve a tax-

neutral comparison between the export price or the constructed exported price and normal value.

See 19 U.S.C. §§ 1677a(c) (adjustments to be made when determining export price and

constructed export price); 1677b(a)(6) (adjustments to be made when determining normal value);

see also China Mfrs. All., LLC v. United States, 43 CIT __, __, 357 F. Supp. 3d 1364, 1370

(2019); Fed. Mogul Corp. v. United States, 63 F.3d 1572, 1580 (Fed. Cir. 1995); Jiangsu Senmao

Bamboo & Wood Indus. Co. v. United States, 44 CIT __, __, 435 F. Supp. 3d 1278, 1289 (2020).

Upward tax-related adjustments to the export price or the constructed export price are made to reduce a dumping margin and account for any import duties imposed by the country of exportation that have been rebated, or not collected, by reason of the exportation of the subject merchandise to the United States. <u>See</u> 19 U.S.C. § 1677a(c)(1)(B). Such duties are added to the export price or the constructed price to allow a tax-neutral comparison with the home market price of the foreign like product. If import duties are irrecoverable, i.e., not rebated or avoided by reason of the exportation, the duties are included presumably in the export price or constructed export price, and no upward or downward adjustment is made because the price comparison is already tax-neutral. The Tariff Act treats domestic VATs of an exporting country similar to its treatment of import duties imposed by an exporting country: i.e., a dumping margin potentially may be reduced for VATs imposed on a finished good, or the materials used to produce it, if those taxes are refunded or avoided due to the exportation of the good. Under the statute, a domestic VAT, whether or not refunded or avoided by reason of the exportation of the finished good, does not increase a dumping margin.

Downward tax-related adjustments to the export price or the constructed export price are made to increase a dumping margin and to account for an export tax, duty, or other charge imposed on the exportation of the subject merchandise to the United States, if included in the export price or the constructed export price. 19 U.S.C. § 1677a(c)(2)(B). A domestic VAT is presumed to be included in the price of the subject merchandise and also in the price of the foreign like product. Thus, 19 U.S.C. § 1677a(c)(2)(B) does not permit any downward adjustments to the export price or the constructed export price for domestic VAT, as no such adjustment is necessary or appropriate to achieve tax-neutrality.

Commerce stated that the record showed that the total domestic VAT applied to tires

during the period of review was 17% and the alleged VAT refund rate was 9%.  Remand Results

at 19.  Commerce determined that Sentury's irrecoverable VAT was 8%.  Id.  Commerce

calculated Sentury's export price by deducting 8% of Sentury's export sales value, which

lowered Sentury's export price and increased Sentury's dumping margin.  Id. at 20 ("[W]e have

continued to use the same methodology for calculating Sentury's irrevocable [sic] VAT as a

downward adjustment to [Sentury's export] price under [19 U.S.C. § 1677a(c)(2)(B)]."); see also

Final IDM at 16.  Commerce defined irrecoverable VAT as the amount of "[t]ax which may not

be exempted or offset" when calculating the total amount of a VAT refund.  Remand Results at

15 (citation omitted).  Commerce asserted that according to this definition, Sentury's

irrecoverable VAT fell within the category of "other charge imposed by the exporting country on

the exportation of the subject merchandise to the United States" under 19 U.S.C.

§ 1677a(c)(2)(B) because it was a cost that arose as a result of export sales.  Id. at 10–11.

Commerce explained its interpretation by contrasting a typical VAT system with the

Chinese VAT system.  Id. at 11–16.  Commerce noted that VAT is an indirect consumption tax

that is paid by the buyer at purchase, and then collected by the seller.  Id. at 11.  Commerce

added that input VAT is paid upon the "purchases of production inputs and raw materials" as

defined by Commerce, and output VAT is collected upon the sale of a completed product.  Id.

Commerce stated that in a typical VAT system, input VAT is the burden of the producer of a

good, while output VAT is the burden of the buyer of a good.  Id. at 11–12.  Commerce

explained that an exporter is relieved of any output VAT burden upon exportation of the good

(by refund or lack of collection).  Id. at 12.

Commerce asserted that under Chinese law, producers such as Sentury are not refunded the total paid input VAT upon exportation.  Id. at 12–14.  Commerce explained its view that Chinese law provides for a "VAT refund rate," which is applied to Chinese producers upon export.  Id. at 14.  Commerce alleged that within the Chinese VAT system, the VAT refund rate functions as the amount an exporter is rebated or refunded for the input VAT paid during production.  Id. at 14–15.  Commerce determined that under Chinese law, the input VAT paid during production and not rebated or refunded on exportation is irrecoverable VAT.  Id. Commerce made a downward adjustment to Sentury's export price under section 1677a(c)(2)(B) of the Tariff Act.  Id. at 20.

The court regards Commerce's downward adjustment to Sentury's export price as an improperly deducted irrecoverable VAT from Sentury's export price.  Defendant argues that "[t]he statute does not define 'export tax, duty, or other charge imposed' on the exportation of merchandise," but does not explain how the phrase "by the exporting country on the exportation of the subject merchandise to the United States" does not modify "export tax, duty, or other charge imposed."  Def. Resp. at 16; Remand Results at 10.

The relevant provision provides:

(c) Adjustments for export price and constructed export price.  The price used to establish export price and constructed export price shall be—
. . .
(2) reduced by—
        . . .
        (B) the amount, if included in such price, of any export tax, duty, or other charge imposed by the exporting country on the exportation of the subject merchandise to the United States, other than an export tax, duty, or other charge described in section 771(6)(C) [19 U.S.C. § 1677(6)(C)].

19 U.S.C. § 1677a(c)(2)(B).  The phrase "export tax, duty, or other charge imposed by the exporting country" is modified by the phrase "on the exportation of the subject merchandise to

the United States."  Id.  In combination, the two phrases "export tax, duty, or other charge imposed by the exporting country" and "on the exportation of the subject merchandise" do not describe VAT or irrecoverable VAT.  Irrecoverable or not, VAT is incurred by materials used in the domestic production of a good.  See Qingdao Qihang Tyre Co. v. United States, 42 CIT __, __, 308 F. Supp. 3d 1329, 1339 (2018).  Even if VAT is entirely unrefunded upon the exportation of a good, VAT is not "imposed" on exportation.  See id. ("[A]lthough the term 'tax, duty, or *other charge*' is broader than the word 'tax,' the provision requires that any such 'charge' be imposed . . . *on* the exportation' of the good . . . .  A previously-incurred tax on materials used in domestic production would not seem to satisfy this requirement.").

It is clear to the court that the statutory language of "the amount, if included in such price, of any export tax, duty, or other charge imposed by the exporting country on the exportation of the subject merchandise to the United States" does not cover the type of internal domestic tax demonstrated in this case.  See 19 U.S.C. § 1677a(c)(2)(B).  In order to achieve the result that Commerce seeks, a legislative amendment would be required, such as eliminating the current statutory requirement of "imposed by the exporting country on the exportation."

Commerce noted certain prior decisions of this Court that allowed downward adjustments of export price or constructed export price for irrecoverable VAT as a reasonable interpretation of 19 U.S.C. § 1677a(c)(2)(B).  Remand Results at 17.  Commerce cited Jacobi Carbons AB v. United States ("Jacobi I"), 41 CIT at __, __, 222 F. Supp. 3d 1159, 1186–87 (2017), and proffered that the phrase "other charge imposed" is a catchall phrase that includes irrecoverable VAT.  Id.  The court in Jacobi I analyzed 19 U.S.C. § 1677a(c)(2)(B) and found that the phrase "of any export tax, duty, or other charge imposed by the exporting country" was ambiguous. Jacobi I, 41 CIT at __, 222 F. Supp. 3d at 1186.  The court in Jacobi I interpreted

19 U.S.C.§ 1677a(c)(2)(B) as: "(1) 'the amount, *if included in such price*,' (2) 'of any *export tax,*

*duty, or other charge* imposed by the exporting country' (3) '*on the exportation of* the subject

merchandise to the United States."  Id.  The Jacobi I court explained that the phrase "'other

charge' capture[d] any financial obligation" provided that such charge was "'imposed by the

exporting country on the exportation of the subject merchandise.'"  Id. at __, 222 F. Supp. 3d at

1186–87.  Thus, Jacobi I held that irrecoverable VAT was permissibly construed as an "other

charge" under 19 U.S.C. § 1677a(c)(2)(B) regardless of whether China explicitly labelled

irrecoverable VAT as pertaining to exports or not.  Id. at __, 222 F. Supp. 3d at 1187; see also

Aristocraft of Am., LLC v. United States, 41 CIT __, __, 269 F. Supp. 3d 1316, 1324–25 (2017)

(citation omitted) ("It is reasonable to describe an input VAT not fully recouped on export sales

as a cost imposed on the exportation of the subject merchandise.").

        The court is unable to agree that Commerce's interpretation of the export VAT provision,

as ruled upon in Jacobi I, is permissible.  The court agrees with the reasoning by the court in

Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States, 44 CIT __, __, 435 F. Supp. 3d

1278, 1298 (2020), that the premise that the statute is ambiguous as to whether the statute applies

to assessments imposed solely upon export sales or assessments imposed upon sales at the time

of export, "addresses only the language of the export tax provision without considering the other

tax-related provisions in the Tariff Act that lend the export tax provision meaning and context."

Id.

        Even if the court were to agree that the export tax provision is ambiguous as described in

Jacobi I, this court does not read the phrase "of any export tax, duty, or other charge imposed by

the exporting country" in isolation.  See Duncan v. Walker, 533 U.S. 167, 174 (citation omitted)

("It is our duty 'to give effect, if possible, to every clause and word of a statute.'").  The meaning

of "other charge" is not so ambiguous as to change the meaning of "on the exportation of the

subject merchandise to the United States" in 19 U.S.C. § 1677a(c)(2)(B).  19 U.S.C.

§ 1677a(c)(2)(B); see also Guizhou Tyre Co. v. United States, 44 CIT __, __, 389 F. Supp. 3d

1350, 1366–70 (2019) ("[W]hether or not recovered by reason of exportation, the [VAT]

imposed by [China], as Commerce itself describes it, cannot lawfully be deemed a tax 'on the

exportation of the subject merchandise' . . . ").

This court does not agree with the interpretation that the "other charge imposed by the

exporting country" language provides sufficient leeway to avoid the plain meaning of the whole

statute.  See 19 U.S.C. § 1677a(c)(2)(B).  A previously-incurred tax that is charged on materials

used in domestic production, such as VAT, does not satisfy the requirement of the phrase "on the

exportation of subject merchandise" because the internal domestic tax is not imposed by China

on the exportation of subject merchandise.  See id.  A partial refund of 9% from Sentury's sales

price out of 17% of Sentury's total input VAT is not equivalent to a charge of 8% on Sentury's

sales price imposed on the exportation of Sentury's subject merchandise.  Therefore, the court

concludes that Commerce's interpretation of irrecoverable VAT as an "other charge imposed . . .

on the exportation of [] subject merchandise" is unreasonable and contrary to the plain meaning

of the statute.  See id.

There is no record evidence in this case demonstrating that China imposed an export tax

or any similar tax on the subject merchandise upon exportation.  The record shows that Chinese

VAT was incurred by a tire producer in China by the inclusion of this tax in the prices of

materials used in domestic production, regardless of whether the finished tire was sold for

domestic consumption or export.  Remand Results at 19.  The record establishes that at least

some of that tax was rebated, refunded, or avoided if the tire was sold for export.  Id.  The fact

that a domestic VAT incurred on materials used in producing tires in China might not be fully refunded by reason of exportation of the finished tire did not convert any unrefunded portion of such a tax from a domestic VAT into an export tax.

The court concludes that Commerce's deduction of irrecoverable VAT from Sentury's export price is contrary to the plain meaning of the statute and conflicts with the purpose of tax-neutrality in the Tariff Act.  The court holds that Commerce's downward adjustment to Sentury's export price pursuant to 19 U.S.C. § 1677a(c)(2)(B) is not in accordance with the law.  The court concludes also that Commerce's irrecoverable VAT calculation is not supported by substantial evidence.  The court remands for Commerce to eliminate the adjustments made for Sentury's irrecoverable VAT in accordance with this opinion and to recalculate Sentury's export price.

## II.    Commerce's Assignment of the China-Wide Entity Rate to Pirelli

The second issue considered by the court is whether Commerce's assignment of the China-wide entity rate to Pirelli is supported by substantial evidence.  Commerce denied separate rate status to Pirelli in the Final Results, asserting that Pirelli failed to rebut the presumption of de facto or de jure Chinese government control of its operations.  See Shandong Yongtai, 43 CIT at __, 415 F. Supp. 3d at 1317; see also Final IDM at 27–28.  The court remanded for Commerce to address in more detail the criteria for de jure and de facto governmental control of Pirelli. Shandong Yongtai, 43 CIT at __, 415 F. Supp. 3d at 1317.

On remand, Commerce continued to deny separate rate status to Pirelli due to Commerce's determination of de facto governmental control.  Remand Results at 29.  Commerce examined evidence on the record pertaining to Pirelli's ownership and organization, noting that Chinese government-owned entities had majority ownership of Pirelli.  Id. at 40.  Commerce

determined that Pirelli failed to rebut the presumption of government control. <u>Id.</u> at 29; 40–41. Pirelli filed comments in opposition. Pirelli Cmts.

Commerce has statutory authority to determine if a country is a non-market economy pursuant to 19 U.S.C. § 1677(18). 19 U.S.C. § 1677(18); <u>see also</u> <u>Sigma Corp. v. United States</u>, 117 F.3d 1401, 1404–06 (Fed. Cir. 1997). In proceedings involving a non-market economy, such as China, a rebuttable presumption exists that all companies within the country are subject to government control and should be assigned a single, country-wide antidumping duty rate. <u>See</u> <u>Sigma Corp.</u>, 117 F.3d at 1405. An exporter will receive the country-wide rate by default, unless it demonstrates affirmatively that the exporter maintains both de jure and de facto independence from the government and deserves to receive separate rate status. <u>See</u> <u>id.</u> The burden of rebutting the presumption of government control rests with the exporter. <u>See</u> <u>id.</u> at 1405–06.

The de jure criteria are: (1) an absence of restrictive stipulations associated with an individual exporter's business and export licenses; (2) any legislative enactments decentralizing control of companies; and (3) any other formal measures by the government decentralizing control of companies. <u>See</u> <u>Ad Hoc Shrimp Trade Action Comm. v. United States</u>, 37 CIT 1085, 1090 n.21 (2013) (citation omitted).

The de facto criteria are: (1) whether the export prices are set by or are subject to the approval of a government authority; (2) whether the respondent has authority to negotiate and sign contracts and other agreements; (3) whether the respondent has autonomy from the government in making decisions regarding the selection of management; and (4) whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses. <u>See</u> <u>id.</u>

The U.S. Court of Appeals for the Federal Circuit has sustained Commerce's application of the rebuttable presumption of government control for non-market economies.  Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304, 1311 (Fed. Cir. 2017); see also Changzhou Hawd Flooring Co. v. United States, 848 F.3d 1006, 1009 (Fed. Cir. 2017).  All four factors of the de facto test must be satisfied to rebut the presumption of government control.  See Yantai CMC Bearing Co. v. United States, 41 CIT__, __, 203 F. Supp. 3d 1317, 1326 (2017); see also Advanced Tech. & Materials Co. v. United States, 37 CIT 1487, 1493–94 (2013), aff'd, 581 F. App'x 900 (Fed. Cir. 2014) (per curiam) ("[E]ach of the de facto prongs must be satisfied for a company to get a separate rate.").  The de facto test is therefore conjunctive, and an exporter must satisfy all four factors to rebut the presumption of government control.  See Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States, 42 CIT __, __, 350 F. Supp. 3d 1308, 1321 (2018).

Commerce determined that Pirelli failed to satisfy the third criterion of the de facto test, whether the respondent has autonomy from the government in making decisions regarding the selection of management, because evidence on the record regarding Pirelli's organization and ownership structure indicated that a majority of Pirelli's owners were Chinese government entities who had control over Pirelli's selection of management.  Remand Results at 25–29, 40–41.  Commerce examined documents on the record, including Pirelli's articles of association, purchase agreements, board of directors meeting minutes, resolutions, and company financial statements, to determine what role Chinese-owned government entities had in Pirelli's operations and selection of management.  Id. at 28.  Commerce determined, based on its review of the record, that Chinese government-owned entities owned a majority of Pirelli and had control of its management through Pirelli's board, intermediary and interconnected layers of ownership and

interests, and high concentrations of Chinese government ownership within Pirelli's

organizational structure.  Id. at 28, 40–41.

Commerce determined that documents placed on the record by Pirelli showed that

Chinese government-owned entities exercised control throughout the Pirelli companies'

ownership structure and management.  Id. at 25–26, 40–41.  These documents showed, for

example, that: the Pirelli companies shared common board membership and management; all of

the various Pirelli companies were intertwined with controlling interests in each other; Pirelli

China was controlled and majority owned by Chinese government-owned entities; the

acquisition of Pirelli's companies in Italy by China National Chemical Corporation ("Chem

China") gave rise to the presumption of government control of Pirelli China; and Chinese

government-owned entities

> retain actual or potential control and influence throughout the Pirelli companies'
> ownership structure and management, including Pirelli [Tyre Co.]'s board, which
> in turn selects Pirelli [Tyre Co.]'s management.  Notwithstanding the layers of
> intermediate ownership, by having decision making power and influence over the
> choice of Pirelli [Tyre Co.]'s management, [the Chinese government-owned
> entities] also have control over the day-to-day operations of the company since it is
> management's job to oversee the daily functions of Pirelli [Tyre Co.]

Id. at 25–28, 39–41.

Pirelli argues that Commerce failed to apply the de facto test properly and that the

agency's determination was not supported by the record.  Pirelli Cmts. at 3, 7–12.  To the

contrary, the court notes that Commerce does not need to analyze all four factors of the de facto

criteria, because the failure to meet any one of the factors based on substantial evidence can

determine dispositively that an entity is under de facto government control.  See Yantai CMC

Bearing Co., 42 CIT at __, 203 F. Supp. 3d at 1325–26 ("Yantai CMC failed to meet the third

factor of the test.  Given that all four factors must be satisfied, Commerce had no further

obligation to continue with the analysis.").

The court concludes that substantial evidence supports Commerce's determination that Pirelli lacked autonomy and that the Chinese government had decision-making control regarding the selection of Pirelli's management.  Because Pirelli failed to rebut the presumption of government control, the court sustains Commerce's assignment of the China-wide entity rate to Pirelli.

**III.    Commerce's Adjustment for the Export Buyer's Credit Program**

The third issue considered by the court is whether Commerce's determination to make an export subsidy adjustment for the EBCP is in accordance with the law.  In the Final Results, Commerce declined to adjust Sentury's export price upward according to 19 U.S.C. § 1677a(c)(1)(C).  See Shandong Yongtai, 43 CIT at __, 415 F. Supp. 3d at 1314.  Commerce determined that because the counterpart countervailing duty investigation only determined the EBCP to be countervailable based on adverse facts available ("AFA"), the credit that Sentury received through the EBCP was not an export subsidy within the meaning of 19 U.S.C.§ 1677a(c)(1)(C).  Id.  The court found that Commerce's determination to decline an adjustment for the EBCP was not supported by substantial evidence.  Id. at __, 415 F. Supp. 3d at 1315.  The court remanded for Commerce to reconsider Sentury's export price adjustments. Id.

On remand, Commerce increased Sentury's export price by the amount of the countervailable duty Sentury received due to the EBCP.  Remand Results at 20–23.  Sentury filed comments in support of Commerce's determination.  Sentury Supp. Cmts.

A subsidy is countervailable when an authority provides a financial contribution to a person, a benefit is conferred, and the subsidy is specific, as described in 19 U.S.C. § 1677(5).

19 U.S.C. § 1677(5)(A)–(D). A subsidy is specific if it is an export subsidy, an import

substitution subsidy, or a domestic subsidy under 19 U.S.C. § 1677(5A)(A)–(D). Under

19 U.S.C. § 1677(5A)(B), an export subsidy is a subsidy that is, in law or in fact, contingent

upon export performance, alone or as one of two or more conditions. Id. § 1677(5A)(B).

Commerce is required to increase the price used to establish export price or constructed export

price by "the amount of any countervailing duty imposed on the subject merchandise . . . to

offset an export subsidy." Id. § 1677a(c)(1)(C).

In the counterpart countervailing duty investigation for certain passenger vehicle and

light truck tires, Commerce determined the EBCP to be a countervailing duty based on AFA.

See Decision Mem. Certain Passenger Vehicle and Light Truck Tires at 22–24, C-570-017 (Aug.

31, 2017), available at https://enforcement.trade.gov/frn/summary/prc/2017-18997-1.pdf (last

visited December 21, 2020). After the court's remand, Commerce reconsidered its approach to

Sentury's antidumping duty margin calculation, and pursuant to 19 U.S.C. § 1677a(c)(1)(C),

adjusted Sentury's export price upward by the amount of the countervailing duty rate applied to

the EBCP in the companion countervailing duty passenger tire cases. Remand Results at 21–23;

see also 19 U.S.C. § 1677a(c)(1)(C).

Commerce cited the countervailable duty imposed because of the EBCP in the

counterpart countervailing duty investigation and other investigations before this Court to

explain its reconsideration of the upward adjustment for the EBCP. Remand Results at 21–22.

The court concludes that Commerce's determination that the EBCP was a countervailable duty

and adjustment of Sentury's export price upward pursuant to 19 U.S.C. § 1677a(c)(1)(C) is

reasonable and supported by the counterpart countervailing duty investigation, based on

Commerce's previous determination of specificity in the counterpart CVD administrative review

that necessarily included an export subsidy determination.  The court sustains Commerce's

upward EBCP adjustment to Sentury's export price pursuant to 19 U.S.C. § 1677a(c)(1)(C) as in

accordance with the law.

## IV.    Commerce's Successor-in-Interest Determination

The fourth issue before the court is whether Commerce's determination that Plaintiff is

the successor-in-interest to Shandong Yongtai Chemical is supported by substantial evidence.

Commerce denied separate rate status to Plaintiff's former entity, Shandong Yongtai Chemical.

See Shandong Yongtai, 43 CIT at __, 415 F. Supp. 3d at 1310–11; see also Final IDM at 25.

The court remanded for Commerce to reconsider Shandong Yongtai Chemical's separate rate

status.  Shandong Yongtai, 43 CIT at __, 415 F. Supp. 3d at 1311.

On remand, Commerce solicited more information from Plaintiff to determine whether it

was the successor-in-interest to Shandong Yongtai Chemical.  Remand Results at 7.  After

considering the submitted supplemental information, Commerce noted that Plaintiff had

previously identified itself as Shandong Yongtai Chemical and that the two companies shared the

same business registration number, address, legal representation, business scope, and

management.  Id. at 7–9.  Commerce determined that Plaintiff "met the criteria to be considered

the successor-in-interest to [Shandong] Yongtai Chemical."  Id. at 8.  Plaintiff filed comments in

support of Commerce's determination but noted its concern about a potential ministerial error in

the Remand Results.  Pl. Cmts. at 2–3.

The court issued a letter to the parties concerning this issue.  See Nov. 13, 2020 Letter,

ECF No. 90.  The court asked the parties to address the ministerial error and to clarify whether

Plaintiff should be identified as "Shandong Yongtai Group Co., Ltd. formerly known as

Shandong Yongtai Chemical Co., Ltd." in the liquidation instructions to be issued to U.S.

Customs and Border Protection.  Id.

 The parties filed a joint response on November 18, 2020.  See Joint Resp. Court's Nov.

13, 2020 Letter, ECF No. 91.  Plaintiff and the Government confirmed the ministerial error in the

Remand Results concerning Plaintiff's designation.  Id.  The parties clarified that the correct

designation is "Shandong Yongtai Group Co., Ltd. formerly known as Shandong Yongtai

Chemical Co., Ltd.," and that Plaintiff will be identified correctly in the liquidation instructions

issued to U.S. Customs and Border Protection.  Id.

 Based on Commerce's review of supplemental evidence on the record and the

clarification of the ministerial error provided by the parties, the court sustains Commerce's

determination regarding Plaintiff as the successor-in-interest to Shandong Yongtai Chemical in

the Remand Results.

## CONCLUSION

 The court remands Commerce's calculation of Sentury's export price based on a VAT

deduction and instructs Commerce to eliminate the adjustments made for Sentury's irrecoverable

VAT in accordance with this opinion and to recalculate Sentury's export price.

 The court sustains Commerce's assignment of the China-wide entity rate to Pirelli,

Commerce's upward adjustment of Sentury's export price, and Commerce's successor-in-interest

determination.

 Accordingly, it is hereby

 **ORDERED** that the Remand Results are remanded to Commerce for further proceedings

consistent with this opinion; and it is further

 **ORDERED** that Commerce shall afford the parties at least twelve (12) business days to

comment on the draft second remand results; and it is further

**ORDERED** that this action shall proceed according to the following schedule:

1.  Commerce shall file the second remand results on or before February 19, 2021;

2.  Commerce shall file the administrative record on or before March 5, 2021;

3.  Comments in opposition to the second remand results shall be filed on or before April 9, 2021;

4.  Comments in support of the second remand results shall be filed on or before May 7, 2021; and

5.  The joint appendix shall be filed on or before May 21, 2021.

     /s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:    December 21, 2020
New York, New York